LAW OFFICES OF
## SIDNEY L. GOLD & ASSOCIATES
A PROFESSIONAL CORPORATION

_____

1835 MARKET STREET, SUITE 515
PHILADELPHIA, PA 19103
(215) 569-1999    FAX (215) 569-3870

SIDNEY L. GOLD * + **
WILLIAM RIESER*
JAMIE L. FORD*
BRIAN C. FARRELL*
MARGARET KING*
GIUSEPPE V. GALANTUOMO

\*         ALSO ADMITTED IN NEW JERSEY
\+         ALSO ADMITTED IN NEW YORK
\**        ALSO ADMITTED IN DISTRICT OF COLUMBIA

May 17, 2023

Honorable Elizabeth A. Pascal
United States Magistrate Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room
Camden, NJ 08101

      **Re:   William T. Lavell v. Camden County College**
           <u>U.S. District Court for the District of New Jersey No.:  21-6832</u>

Dear Judge Pascal:

      I represent the Plaintiff in the above-referenced matter.  I am writing in response to Defendant's May 11, 2023 letter.

      Defendant's letter is based on the false assumption that Dr. Thompson's rebuttal report is even subject to exclusion or warrants any form of sanction.  As stated in our initial letter and at oral argument, Dr. Thompson's rebuttal is not contrary to his initial report, but rather an elaboration and direct response to Chad Staller's report.

      Staller criticized Dr. Thompson for failing "to provide any analysis, discussion, or explanation, nor does he cite any empirical data, study, or treatise, in support of the assumption that Dr. Lavell's degrees would entitle him to an 8% salary increase compared to Dr. Roberts and Dr. Chatman."  Staller report at p. 6.  In response, Dr. Thompson included "empirical data" and a "study" by citing a report from the American Association of University Professors (AAUP) on page 2 of his rebuttal.  Additionally, Dr. Thompson directly responded to Staller by explaining why Roberts and Chatman are appropriate comparators, the importance of degrees in setting salary consistent with industry standards, and considers other factors besides "inflation" for their 1991-1996 salaries.  Accordingly, Dr. Thompson's report is "merely rebuttal to the defense experts'

opinions and a further elaboration of the opinions expressed in the initial expert report." Pritchard v. Dow Agro Scis., 263 F.R.D. 277, 286-87 (W.D. Pa. 2009).

Your Honor should reach the same conclusion as Pritchard, and hold that because the rebuttal report was merely an "elaboration," there were "no violations of the discovery rules" and therefore any sanctions, "are inappropriate." Id. at 287.

For completeness, Plaintiff responds to the points in Defendant's letter.

### 1. There is no prejudice to Defendant

Defendant claims they were allegedly "unable to fully explore the new data and methodology employed in Dr. Thompson's report dated April 5, 2023 prior to his deposition." Defendant's letter at p. 1. However, during a phone call between counsel on April 11, we discussed the possibility of rescheduling Dr. Thompson's deposition. Defendant's counsel expressly stated she saw "no reason" to reschedule Dr. Thompson's deposition. Plaintiff would have been more than willing to reschedule the deposition if they requested more time. During the last status conference with the Court, Your Honor said she would be more than willing to adjust the expert discovery deadline to accommodate any issues. Instead, Defendant voluntarily proceeded with the deposition on the originally scheduled date. Therefore, any prejudice was self-inflicted.

Additionally, Defendant's counsel **admitted** at the May 3, 2023 oral argument that not seeking to reschedule Dr. Thompson's deposition was "strategic." Defendant's "strategy" is now clear. As they originally stated, Defendant knew there was "no reason" to reschedule or reopen the deposition. They deliberately chose to not reschedule so they could manufacture a back-up argument, whereby they could still claim "prejudice" for not having time to "fully explore" Dr. Thompson's report. This is pure gamesmanship. Plaintiff should not bear the cost of Defendant's own "strategic" choices.

Moreover, counsel was already able to question Dr. Thompson at length about his rebuttal report. Defendant has not presented a single question or line of inquiry that they did not have an opportunity to ask at Dr. Thompson's initial deposition. There is no reason to have a supplemental deposition. However, should the Court allow another deposition, it should be confined solely to questions that were not asked at the initial deposition and the costs borne by Defendant.

### 2. Defendant can easily cure any "prejudice."

Defendant concedes that the Court can cure any alleged "prejudice" by simply adjusting the deadlines or allow them the opportunity to submit a supplemental report. Despite acknowledging this reality, Defendant half-heartedly argues there is a **theoretical**

**possibility** of Plaintiff wanting to submit their own additional report.  Defendant's hypothetical scenario is not prejudice; it is pure fantasy.  Plaintiff does not want to submit another report.  If Defendant wants to submit an additional report they should do so at their own cost, and not reap the rewards from their own "strategic" decisions.  Defendant has not provided any authority that suggests a civil-rights' plaintiff should pay for their own "strategic" decisions.

### 3. The trial in this case would not be disrupted.

The trial in this case would clearly not be disrupted, because it has not even been scheduled yet.  The only deadline is the dispositive motion deadline, which is over a month away, and will not be affected by the resolution of this issue.

### 4. There was no bad faith or willfulness.

As stated in Plaintiff's initial letter and explained at oral argument, the one (1) business day delay, over a holiday weekend, was the result of an inadvertent error.  That innocent mistake certainly does not rise to the level of "bad faith" or "willfulness."

Defendant should bear its own costs for seeking any further expert discovery.  "As a general rule, parties must bear the costs of complying with discovery requests." Hawa v. Coatesville Area Sch. Dist., 2017 U.S. Dist. LEXIS 37675, at *3 (E.D. Pa. Mar. 16, 2017).  Defendant has not supplied a single case where a civil rights plaintiff was ordered to bear the costs of a wealthy Defendant, with insurance coverage, in similar circumstances.[1]

I would be happy to provide any additional information the Court deems necessary.

> Respectfully,
> *William Rieser*
> WILLIAM RIESER

WR/ars

---

[1] Defendant's former President, Donald Borden, estimated their endowment to be 2-3 million dollars at his deposition.  Borden Dep. At p. 20.