[ECF No. 56]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **WILLIAM T. LAVELL,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**CAMDEN COUNTY COLLEGE,**<br><br>        **Defendant.** | Case No. 21-6832 (KMW)(EAP) |

## OPINION

This matter comes before the Court by way of Defendant Camden County College's Motion, ECF No. 56, seeking to strike the rebuttal report of Plaintiff William T. Lavell's expert witness, Dr. Don Thompson, Ph.D. The Court has received Plaintiff's opposition letter, ECF No. 58; Defendant's supplemental letter, ECF No. 60; and Plaintiff's supplemental letter, ECF No. 62. The Court has considered the parties' submissions and held oral argument on the record pursuant to Federal Rule of Civil Procedure 78(a). For the reasons that follow, and for good cause shown, Defendant's Motion to Strike is **DENIED WITHOUT PREJUDICE**.

## FACTUAL BACKGROUND

Plaintiff William T. Lavell ("Plaintiff") has been employed by Defendant Camden County College ("Defendant") since January 1995. ECF No. 1, Complaint ("Compl."), ¶ 10. Over the course of his employment with Defendant, Plaintiff has held the positions of Assistant Professor, Professor, Interim Dean, and Department Chair. *Id*. ¶ 11. Plaintiff, who is Caucasian, allegedly "discovered stark racial disparities in salary between himself and his similarly situated, non-

Caucasian counterparts" through an Open Public Records Act request. *Id*. ¶¶ 10, 13-14. Plaintiff submitted an internal complaint of racial discrimination, seeking an "adjustment of his compensation to a rate commensurate with his similarly situated, non-Caucasian counterparts." *Id*. ¶¶ 15-16. Defendant allegedly refused, and continues to refuse, to adjust Plaintiff's salary or to investigate Plaintiff's allegations. *Id*. ¶¶ 17-18.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint in this action on March 26, 2021, asserting claims of race discrimination pursuant to 42 U.S.C. § 1981 (Count I), and the New Jersey Law Against Discrimination (Count II). *Id*. ¶¶ 19-26. Plaintiff seeks, among other relief, an award of back pay "to which he would have been entitled had he not been subjected to unlawful discrimination." *Id*. ¶ 27. The expert discovery deadlines in this action have expired, but no dispositive motions have been filed to date, and the case has not yet been scheduled for trial. *See* ECF No. 55, Am. Scheduling Order.

Plaintiff has retained an economic expert witness, Dr. Don Thompson, Ph.D. ("Dr. Thompson"), to present an opinion on Plaintiff's damages. ECF No. 56, Ex. D, Expert Witness Report by Don Thompson, Ph.D. ("Pl.'s Exp. Rpt.") at 1. Dr. Thompson prepared an initial expert report, dated January 23, 2023. *Id*. Defendant has retained its own economic expert witnesses: Chad L. Staller and Stephen M. Dripps. ECF No. 56, Ex. A, Economic Expert Report by Chad L. Staller and Stephen M. Dripps ("Def.'s Exp. Rpt.") at 1. Defendant served its expert report on March 7, 2023. *Id*., Ex. A at 1. Dr. Thompson prepared a rebuttal expert report, dated April 5, 2023. ECF No. 56, Ex. C, Rebuttal to Defense Team ("Pl.'s Rebut. Rpt.") at 1. However, Plaintiff's rebuttal report was first served on April 10, 2023. ECF No. 56, Ex. B, Email from Amber R. Shields.

On April 12, 2023, Defendant filed the present Motion to Strike Plaintiff's rebuttal expert report.  ECF No. 56, Defendant's Motion to Strike ("Def.'s Motion").  Defendant argues that the rebuttal report should be stricken for two reasons.  *Id*. at 1-2.  First, Defendant argues that the rebuttal report was not timely served.  *Id*.  Second, Defendant argues that the rebuttal report is improper because it "does not address, contradict, or rebut" evidence on the same subject matter as Defendant's Economic Expert Report and because it inadmissibly relies on new data and a new methodology to reach a new estimate of Plaintiff's cumulative damages.  *Id*. at 4-5.

Later on April 12, 2023, Defendant conducted Dr. Thompson's deposition with Defendant's reservation that the deposition would be subject to a ruling on the present Motion to Strike.  Def.'s Motion at 1.

On April 26, 2023, Plaintiff filed opposition to Defendant's Motion to Strike.  ECF No. 58, Plaintiff's Letter in Opposition ("Pl.'s Opp.").  Plaintiff acknowledges that Dr. Thompson's rebuttal report was not timely served, but Plaintiff characterizes the delay as a "simple, harmless error" caused by an assistant calling out "due to her son being ill" the day before a holiday weekend.  *Id*. at 1.  Plaintiff also argues that the substance of the rebuttal report is proper because it "directly responds" to the criticisms of Defendant's experts.  *Id*. at 2.  Plaintiff asserts that his expert's rebuttal report is "merely an 'elaboration' of his original report that is 'consistent' with his original opinion."  *Id*. at 2.

On May 3, 2023, the Court conducted oral argument on Defendant's Motion.  *See* ECF No. 61, Transcript of Expert Report Hearing ("Hearing Tr.").  At the motion hearing, Defendant again argued that the rebuttal report was untimely, *see id.* at 5:5-18, and improper because it "utilize[d] a different methodology and a different set of data that was not previously relied upon in the initial report."  *See id*. at 9:14-19.  Further, Defendant argued that it was prejudiced by being unable to "refute any of the conclusions or analyses" presented in the rebuttal report.  *Id.* at 16:24 to 17:4.

3

In response, Plaintiff characterized the late service of the rebuttal report as an "oversight," given the circumstances. *Id*. at 19:7-15.  Also, Plaintiff argued that Dr. Thompson's rebuttal report was "consistent with his initial analysis" and that the newly cited evidence was introduced to "further bolster his argument." *Id*. at 21:17-24.  Lastly, Plaintiff argued that Defendant suffered no prejudice because the rebuttal report could be explored on cross-examination. *Id*. at 22:6-13.

At the hearing, the Court directed Defendant to file a letter stating what additional discovery Defendant would seek, should the Court permit Plaintiff's April 5, 2023 expert report, and to identify the costs of such discovery. *Id*. at 22:19-23; 25:21 to 26:3; 27:8-11.  On May 11, 2023, Defendant filed a letter outlining the additional discovery it requests and presenting arguments on the factors governing exclusion of an expert report.  ECF No. 60, Defendant's Supplemental Letter ("Def.'s Supp. Ltr.").  In addition, Defendant requests that Plaintiff bear the cost of this additional discovery. *Id*. at 1.

On May 17, 2023, Plaintiff filed a supplemental letter in response.  ECF No. 62, Plaintiff's Supplemental Letter ("Pl.'s Supp. Ltr.").  Plaintiff again argues that Dr. Thompson's rebuttal report is a proper "elaboration" of his initial report, but "[f]or completeness," Plaintiff responds that the relevant factors do not support striking the rebuttal report. *Id*. at 1-2.  Moreover, Plaintiff argues that Defendant should not be afforded additional expert discovery and that Plaintiff should not bear any of Plaintiff's expenses. *Id*. at 2-3.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(a)(2) requires parties to disclose the identity of any witness it may use at trial to present expert testimony.  "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report" containing, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" along with "the facts or data considered by the witness in forming them . . . ."

4

Fed. R. Civ. P. 26(a)(2)(B).  After initial expert reports are filed, a party may file an additional expert report that contains evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . ."  Fed. R. Civ. P. 26(a)(2)(D)(ii).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013) ("If an expert report is stricken, that action effectively precludes the expert from testifying as to the subject matter and opinions contained in the report.").  However, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence."  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)).  "[I]t should not be imposed where an untimely or improper expert disclosure amounts to only a 'slight deviation from pre-trial notice requirements' or occasions only 'slight prejudice' to the movant."  *Withrow*, 967 F. Supp. 2d at 1000 (quoting *Paoli*, 35 F.3d at 792).

## DISCUSSION

### I.    Plaintiff's Rebuttal Expert Report Was Served Four Days Overdue

The parties agree that Plaintiff's rebuttal expert report was filed four days after the deadline established by the Federal Rules of Civil Procedure.  *See* Def.'s Motion at 1-2; Pl.'s Opp. at 1-2. "Absent a stipulation or a court order," a rebuttal report must be served "within 30 days after the other party's disclosure."  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Here, the Court did not set a deadline for rebuttal reports, and the parties did not stipulate to a deviation from Rule 26(a)(2)(D)(ii).  *See* Def.'s Motion at 2.  Defendant's expert report was served on March 7, 2023, *see* Def.'s Exp. Rpt.

5

at 1, which required Plaintiff's rebuttal report to be served within 30 days, or no later than April 6, 2023. However, the rebuttal report was served four days late on April 10, 2023. *See* Pl.'s Opp. at 1. As such, the Court will proceed to evaluate whether the rebuttal report should be stricken for untimeliness. *See infra* Section III.

### II. Plaintiff's Rebuttal Expert Report Does Not Properly Contradict Defendant's Expert Report

In addition, Defendant seeks to strike Plaintiff's rebuttal expert report because it does not properly respond to Defendant's expert report. Def.'s Motion at 2-4. Defendant argues that the rebuttal report fails to challenge the methodology, facts, or evidence relied upon by Defendant's experts. *Id*. at 2. "Indeed, it does not even mention any of the findings or analysis set forth in Defendant's Economic Expert Report." *Id*. Moreover, Defendant argues that Plaintiff's expert, Dr. Thompson, improperly "employs a new method for calculating Plaintiff's alleged losses and reaches a different conclusion as to cumulative damages" from his initial expert report. *Id*. at 3. Defendant argues that Dr. Thompson's rebuttal report is not a defense of his initial expert report, but instead, a new analysis based on newly introduced data. *Id*. at 4; *see also* Hearing Tr. at 9:14 to 10:5; 15:8-15.

Plaintiff argues that the rebuttal report "directly responds" to the criticisms raised by Defendant's expert witnesses. Pl.'s Opp. at 2. Also, Plaintiff argues that Dr. Thompson's opinion on Plaintiff's damages in the rebuttal report is consistent with his initial opinion. *Id*. Plaintiff contends that, "[a]t worst," the rebuttal report "is merely an 'elaboration of' his original report." *Id*.; *see also* Hearing Tr. at 20:10-11.

"[R]ebuttal evidence is limited to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief." *Crowley v. Chait*, 322 F. Supp. 2d 530, 550 (D.N.J. 2004) (quotation omitted). Rebuttal reports "may cite new evidence and data so

6

long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Withrow*, 967 F. Supp. 2d at 1002 (quotation omitted). "On the other hand, expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *Id.*; *see also Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2013 WL 5410531, at *2 (D.N.J. Sept. 26, 2013) (noting that "[r]ebuttal cannot be used to correct a party's oversights in its case-in-chief" and that "the applicable case law prohibits an expert from using rebuttal as a 'do-over' of an original report"). A rebuttal report is improper "if it contains new opinions or information which is contradictory to that set forth in the expert report, but it need not be stricken if it contains merely an elaboration of and consistent with an opinion/issue previously addressed in the expert report." *Pritchard v. Dow Agro. Scis.*, 263 F.R.D. 277, 284-85 (W.D. Pa. 2009) (cleaned up).

Here, the Court finds that Dr. Thompson's rebuttal report is substantively improper for two reasons. First, the rebuttal report generally neglects to challenge or counteract Defendant's experts. To calculate Plaintiff's damages, Dr. Thompson's initial report begins by identifying two non-Caucasian employees, Melvin Roberts and Lawrence Chatman, who also belonged to the STEM (Science, Technology, Engineering, and Math) faculty at Camden County College. Pl.'s Exp. Rpt. at 2-3. Both Roberts and Chatman were hired in 1991. *Id*. Dr. Thompson adjusted Roberts's and Chatman's starting salaries by a 2% inflation rate each year from 1991 to 1996, to provide a level comparison with Plaintiff's starting salary. *Id*. at 3. Dr. Thompson surmised that Plaintiff's starting salary should have been 8% higher than Roberts's adjusted starting salary due to Plaintiff's "superior academic achievement before he was hired." *Id.*[1] Dr. Thompson then

---

[1] Plaintiff's salary in 1996 was $37,800. Pl.'s Exp. Rpt. at 3. Roberts's starting salary in 1991 was $44,000. *Id*. Adjusted by an inflation rate of 2% per year, Roberts's starting salary in

7

calculated the difference between Plaintiff's "suggested" and actual salaries for each year between 1996 and 2021 to arrive at an estimated damages figure of $592,094. *Id*. at 3-4.

In their report, Defendant's experts contend that Dr. Thompson's initial report suffers from flawed methodology, lacks empirical data, and makes unsupported assumptions. Def.'s Exp. Rpt. at 5-7. However, Dr. Thompson's rebuttal report largely ignores the criticisms presented in Defendant's expert report. *See, e.g.*, *In re Asbestos Prod. Liab. Litig. (No. VI)*, Nos. 09-74351X, 09-74410, 2012 WL 661673, at *3 (E.D. Pa. Feb. 8, 2012), *R. & R. adopted*, 2012 WL 661660 (E.D. Pa. Feb. 29, 2012) (striking a plaintiff's rebuttal expert report that "does not directly rebut the defendant's experts" and presents "few, if any, refuting arguments"). For example, Defendant's experts argue that Dr. Thompson did not adequately analyze or discuss why Roberts and Chatman are appropriate faculty comparators. *Id*. at 5. Also, Defendant's experts criticize Dr. Thompson's initial report for not explaining why an inflation rate of 2% is "the only factor affecting salaries between 1991 and 1996" and not citing any "statistics, empirical data, or studies in support of such a calculation." *Id*. Further, Defendant's experts note that Dr. Thompson did not consider other determinants of Plaintiff's starting salary or explain why an 8% upward adjustment for Plaintiff's education was appropriate. *Id*. at 5-6. Moreover, Defendant's experts argue that Dr. Thompson's damages estimate is "overstated" because Plaintiff's recovery is limited by the statute of limitations. *Id*. at 6.

Dr. Thompson's rebuttal report does not directly address any of these major criticisms. *See generally* Pl.'s Rebut. Rpt. at 1-3. The rebuttal report partially repeats the analysis from Dr. Thompson's initial report, but it is generally unresponsive to the substance of Defendant's expert report. *Id*. For instance, the rebuttal report analyzes the salaries of Roberts and Chatman again

---

1996 dollars equates to $48,580. *Id*. Raising this figure by an additional 8% for "superior academic achievement" arrives at Plaintiff's "suggested" starting salary of $52,500. *Id*.

without defending why these two colleagues are appropriate faculty comparators. *Id*. Also, it completely ignores other issues such as the statute of limitations. *Id*. Therefore, the rebuttal report is improper because it largely fails to "explain, repel, counteract or disprove" the contents of Defendant's expert report. *See United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974) (describing the purpose of rebuttal evidence).

Second, Plaintiff's rebuttal expert report is improper because it presents new data, methodology, and conclusions that contradict Plaintiff's initial report. In his rebuttal report, Dr. Thompson employs a new approach to calculate Plaintiff's "suggested" salary and arrives at a different estimate of Plaintiff's cumulative damages. *See* Pl.'s Rebut. Rpt. at 3. For the first time, Dr. Thompson introduces a model of five standard categories of college teachers, which correspond to teachers' highest educational attainment and years of teaching experience. *Id*. at 2.[2] Dr. Thompson argues that Plaintiff's education and experience should have qualified him as an "Associate Professor" rather than an "Instructor." *Id*. Using data from the American Association of University Professors ("AAUP") for each pay rank, the report arrives at a starting salary of $50,863. *Id*. at 3. Then, the report gives Plaintiff an additional 4% increase for having two more years of teaching experience than Roberts or Chatman. *Id*. This results in a final "suggested" starting salary of $52,897. *Id*. Adding the gap to Plaintiff's actual salary for each year between 1996 and 2021, the rebuttal report arrives at a total damages estimate of $629,261. *Id*.

This analysis is not simply an "elaboration" of Plaintiff's initial report because it contradicts the initial report in multiple aspects. *See Haskins*, 2013 WL 5410531, at *2 (distinguishing permissible consistent elaborations from impermissible contradictory information in a rebuttal report). For one, the rebuttal report arrives at a higher "suggested" salary that raises

---

[2] These five categories, in increasing order of pay, are Lecturer, Instructor, Assistant Professor, Associate Professor, and Full Professor. Pl.'s Rebut. Rpt. at 2.

9

the total damages estimate by $37,167 from the initial report.[3]  *See Fulton Fin. Advisors v. Natcity Invs., Inc.*, No. 09-4855, 2016 WL 5461897, at *2 (E.D. Pa. Sept. 28, 2016) (striking a portion of an expert's rebuttal report that presented "a new and contradictory damages calculation" that was "offered as a substitute for the initial calculation").

Also, the rebuttal report employs a significantly different method to arrive at the damages estimate.  The initial report argues, with little elaboration, that Plaintiff's starting salary should have been 8% higher than Roberts's inflation-adjusted starting salary because of Plaintiff's "superior academic achievement."  Pl.'s Exp. Rpt. at 3.  By contrast, the rebuttal report analyzes Plaintiff's educational credentials through a framework of standard categories of college teachers.  *See* Pl.'s Rebut. Rpt. at 2.  Also, the rebuttal report introduces data from the AAUP to establish typical percentage increases in salary between each teaching level.  *Id*. at 2-3.

Although new evidence should not be automatically excluded because it could have been included in an expert's initial report, the Court finds that the new methodology and data amount to an improper "do-over" of the original analysis.  *See Haskins*, 2013 WL 5410531, at *2; *see also Bradley v. Amazon.com, Inc.*, No. 17-1587, 2023 WL 2574572, at *13-14 (E.D. Pa. Mar. 17, 2023) (striking an expert's rebuttal report that "impermissibly offers new, affirmative expert opinion" on a new theory not raised in the expert's initial report).  Dr. Thompson's deposition testimony confirms that his rebuttal report was not a consistent elaboration of his original analysis, but an attempt to correct a flaw in his reasoning.  Dr. Thompson acknowledged that he did not "justify" the 8% salary adjustment in his initial report.  Deposition Transcript of Dr. Don Thompson ("Dep. Tr.") at 83:4-16.  After being "pushed back by the defense team" on where he obtained the figure, Dr. Thompson decided that he "should rethink that, and that's why I wrote the second report."  *Id*.

---

[3]  The total damages estimate in the initial report was $592,094, *see* Pl.'s Exp. Rpt. at 3, compared with the estimate in the rebuttal report of $629,261.  *See* Pl.'s Rebut. Rpt. at 3.

at 83:17-21.  Although Plaintiff argues that both reports consider "the importance of degrees in setting salary consistent with industry standards," *see* Pl.'s Opp. at 2, the two reports place a significantly different value on educational attainment.  *See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2019 WL 581544, at *4 (D.N.J. Feb. 13, 2019) (concluding that a supplemental expert report was "not proper" where an expert "sought an untimely opportunity to improve her methodology after reviewing [the opposing party's expert's] criticism of it").  As such, because Dr. Thompson's rebuttal report overrides his initial findings in favor of a second attempt at an affirmative opinion, the Court finds that his rebuttal report is improper.

### III. The Balance of the Factors Weighs Against Striking Plaintiff's Rebuttal Expert Report

Prior to striking an improper expert report pursuant to Federal Rule of Civil Procedure 37(c)(1), the Court must consider four factors governing the exclusion of evidence.  *Pritchard*, 263 F.R.D. at 282.  These four factors are: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation."  *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).[4]  "Although district courts tend to err on the side of admitting expert testimony" when applying these factors, "such testimony may be excluded in order to protect against the flouting of discovery deadlines . . . ."  *Withrow*, 967 F. Supp. 2d at 1001 (quotation omitted).

---

[4] These factors originated in *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 904-05 (3d Cir. 1977), and are sometimes referred to as the "*Pennypack* factors."  *See, e.g., Withrow*, 967 F. Supp. 2d at 1003-04.

11

### A.   Prejudice or Surprise

First, Defendant argues that it was prejudiced because the delayed service of Dr. Thompson's rebuttal expert report made Defendant "unable to fully explore" the report before taking Dr. Thompson's deposition. Def.'s Supp. Ltr. at 1. On the other hand, Plaintiff characterizes the four-day delay in service as a "simple, harmless error." Pl.'s Opp. at 1; *see also* Hearing Tr. at 19:7-20. The Court finds that Plaintiff was slightly prejudiced by the untimely service. Defendant received the report only two days before Dr. Thompson's deposition, which prevented Defendant from fully examining the data and sources in the rebuttal report before the deposition. *See* Hearing Tr. at 7:9-13. However, a four-day delay in service is unlikely to place a party at a severe tactical disadvantage. *See Leshinski v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers*, No. 18-652, 2020 WL 4783073, at *3 (M.D. Pa. Apr. 3, 2020) (denying a motion to strike expert reports served four months after the relevant disclosure deadline); *White v. Beaver Cnty.*, No. 17-998, 2019 WL 5395212, at *2 (W.D. Pa. Oct. 22, 2019) (declining to take the "draconian measure" of striking an untimely expert report where the moving party should not have been surprised by its service).

Also, Defendant argues that it has been prejudiced by being denied an adequate opportunity to refute the new data, methodology and conclusions in Dr. Thompson's rebuttal report. *See* Hearing Tr. at 16:17 to 17:4. "As a result, Defendant has no report to rebut this new calculus." Def.'s Supp. Ltr. at 1. Plaintiff responds that Defendant "can't claim any prejudice" because the rebuttal is "just an elaboration" of the initial report. Hearing Tr. at 20:5-16. However, as discussed in this Opinion, the Court finds that the rebuttal report contradicts the initial report and improperly presents new data, methodology, and conclusions. *See supra* Section II. As a result, Defendant was prejudiced by not having the opportunity to provide an expert report in response or to fully prepare to question Dr. Thompson about his new data and sources. *See* Hearing

Tr. at 7:9-13.

Further, Plaintiff alleges that Defendant "deliberately chose not to reschedule" Dr. Thompson's deposition in order to engage in "pure gamesmanship" and "manufacture a back-up argument" of prejudice. Pl.'s Supp. Ltr. at 2. However, Defendant's choice to proceed with Dr. Thompson's deposition, especially in the face of the impending deadline to complete depositions of expert witnesses, does not prove that Defendant was dishonest or suffered no prejudice.[5] *See also Ezaki Glico Kabushiki Kaisha*, 2019 WL 581544, at *5 (explaining that a supplemental expert report which presented new opinions was not "harmless" because the time and expense that the opposing party spent addressing the initial report became "wasted").

Still, Defendant was able to partially mitigate the prejudice it suffered by reviewing the rebuttal report with Dr. Thompson during his deposition. Indeed, counsel for Defendant stated that they "did have time to review the report" and "prepare questioning" on some issues before the deposition. Hearing Tr. at 6:21-24. A review of the deposition transcript confirms that Defendant's counsel extensively questioned Dr. Thompson about his rebuttal report and the changes in his analysis. *See generally* Dep. Tr. 84:20 to 109:16. Also, the rebuttal report is only four pages long and does not present a voluminous amount of new information that would require excessive time and expense to review. While improper, the rebuttal report only depends on one new data source, from the AAUP. Therefore, although the late filing and improper analysis in the rebuttal report have prejudiced Defendant, the prejudice alone is not severe enough to justify striking the report.

---

[5] At oral argument, counsel for Defendant explained that "we made a strategic decision to move forward with the deposition, because we didn't want to delay or fall outside of the Court's deadlines. Everybody was set and ready to go, so we thought it was best to move forward with the deposition at that time and put our reservations on the record." Hearing Tr. at 7:14-19.

### B.  Ability to Cure Prejudice

Next, Defendant argues that the Court should not reopen discovery because "that effectively gives Plaintiff a 'do over' as if Dr. Thompson's first report was never rendered." Def.'s Supp. Ltr. at 2. Also, Defendant argues that reopening discovery would result an "an untenable merry-go-round" of additional reports. *Id*. Nevertheless, Defendant proposes additional discovery it would seek to cure the prejudice it suffered. *Id*. at 1. Specifically, Plaintiff requests the opportunity to serve a revised expert report to refute the new methodology and to depose Dr. Thompson again "based upon a complete examination of the data upon which he relied." *Id*.[6] Plaintiff responds that "there is no reason to have a supplemental deposition" because there is not "a single question or line of inquiry" that Defendant was unable to explore at the first deposition. Pl.'s Supp. Ltr. at 2.[7] Also, Plaintiff characterizes Defendant's concerns of extensive additional expert discovery as "pure fantasy" because Plaintiff does not intend to submit an additional expert report. *Id*. at 2-3.

The Court concludes that Defendant's proposal for additional discovery would sufficiently cure the prejudice in this matter. Although reopening discovery effectively gives Plaintiff the benefit of submitting a second affirmative expert report, the harsh sanction of striking the rebuttal report is not warranted here. Permitting Defendant's experts to review the rebuttal report, examine the data, and file another report would allow Defendant to challenge Dr. Thompson's new analysis and conclusions. Since Plaintiff has disavowed the submission of another rebuttal report, an

---

[6] At oral argument, Defendant stated that it "would not object" to an order allowing Defendant's experts to review the rebuttal report and permitting an additional deposition of Dr. Thompson to cure the prejudice it suffered. Hearing Tr. at 17:5-17.

[7] Plaintiff requests that, "should the Court allow another deposition, it should be confined solely to questions that were not asked at the initial deposition . . . ." Pl.'s Supp. Ltr. at 2. It is premature at this time to decide which hypothetical questions are proper. However, at such a deposition, Plaintiff's counsel may object to questions which are unreasonably repetitive.

14

endless cycle of supplemental expert reports will not occur.

In addition, a second deposition of Dr. Thompson with the benefit of full preparation will give Defendant a complete opportunity to probe his analysis. Contrary to Plaintiff's arguments, Defendant has made clear that it lacked an adequate opportunity to question Dr. Thompson on the data supporting his new damages estimate and the sources he relied upon. Hearing Tr. at 7:9-13. Therefore, an additional deposition would be beneficial for curing the prejudice to Defendant. *See also Withrow*, 967 F. Supp. 2d at 1005 (holding that this factor militated against striking a rebuttal report where the moving party had an opportunity to re-depose the expert prior to trial); *United States Fid. & Guar. Co. v. Brown*, No. 01-0813, 2003 WL 25695254, at *3 (M.D. Pa. Mar. 7, 2003) (explaining that an "upcoming deposition will cure any existing prejudice" associated with an untimely expert report). As such, this factor does not support striking the rebuttal report.

In a related issue, Defendant requests that Plaintiff bear the costs of re-deposing Dr. Thompson and the costs for its experts to examine the data cited in the rebuttal report. Def.'s Supp. Ltr. at 1. To this end, Defendant has provided the fee schedule for its experts. *Id.*, Ex. A. In opposition, Plaintiff notes that parties must generally bear the costs of complying with their discovery requests, and Plaintiff argues that, as a civil right litigant, he should not "bear the costs of a wealthy Defendant, with insurance coverage . . . ." Pl.'s Supp. Ltr. at 3.

Federal Rule of Civil Procedure 37 grants the Court "broad discretion regarding the type and degree of sanctions it can impose" against "a party who fails to provide discovery as required by the discovery rules or a court order." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). "In addition to or instead of" excluding evidence, the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" to properly serve an expert report. Fed. R. Civ. P. 37(c)(1)(A); *see also Ezaki Glico Kabushiki Kaisha*, 2019 WL 581544, at *6 (imposing a sanction under Rule 37(c) for reimbursement of attorney's fees and costs that a

party incurred as a consequence of the opposing party's improper supplemental expert report).

Here, the Court finds that the need for additional discovery arising out of Plaintiff's untimely and improper rebuttal report warrants an appropriate sanction. The Court hereby orders that if Defendant decides to re-depose Dr. Thompson, Plaintiff shall pay Dr. Thompson's fee. Contrary to Plaintiff's argument, he has not established that an award of expenses would be unjust. Furthermore, Plaintiff does not claim that he is unable to afford the expenses, and Plaintiff cites to no authority for his argument that he should be immune from sanctions as a civil rights litigant. Consequently, the Court orders Plaintiff to pay Defendant's expert fee expenses associated with taking another deposition of Dr. Thompson.

### C. Disruption

On this factor, Defendant argues that the orderly and efficient trial of this case would be disrupted if the rebuttal report was not struck because the deadlines for service of expert reports and expert depositions have now expired. Def.'s Supp. Ltr. at 2. Plaintiff responds that, "[t]he trial in this case would clearly not be disrupted, because it has not even been scheduled yet." Pl.'s Supp. Ltr. at 3.

First, the Court finds that Plaintiff's four-day delay in serving the rebuttal report was not overly disruptive. *See, e.g.*, *Bowman v. Colomer*, No. 09-1083, 2011 WL 3812583, at *1 (W.D. Pa. Aug. 29, 2011) (finding that the "misstep" of serving a rebuttal expert report "approximately two weeks" overdue "was not fatal"). Also, reopening expert discovery will somewhat delay resolution of this case, but the delay will not be undue. Moreover, this case is not close to a trial date. Dispositive motions have not yet been filed, and a final pretrial conference has not been scheduled. *See, e.g.*, *Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574 (M.D. Pa. 2022) (explaining that "as this case has not been scheduled for trial, any such adjustment would not disrupt the orderly and efficient trial of the case[,]" even though "discovery in this case has dragged

16

on for more than two years . . . ."). Therefore, at this stage of the litigation, this factor also weighs against striking the rebuttal report.

### D. Bad Faith or Willfulness

Lastly, Defendant does not accuse Plaintiff of bad faith or willfully taking improper action. Still, Defendant argues that "Plaintiff's counsel has failed to identify why he or someone else in his office, could not have timely served Dr. Thompson's rebuttal expert report in accordance with the discovery rules . . . ." Def.'s Supp. Ltr. at 2. However, Plaintiff's counsel has explained that the report was prepared before the deadline, and the late service was caused by an assistant calling out due to her son being sick. Hearing Tr. at 19:12-13. Plaintiff's counsel's office was closed the next three days for the Easter holiday, and Plaintiff's counsel served the report on Monday, the day that the office reopened. *Id*. at 19:16-18. Plaintiff argues that this "innocent mistake certainly does not rise to the level of 'bad faith' or 'willfulness.'" Pl.'s Supp. Ltr. at 3. To be sure, a "'[l]ack of diligence' does not constitute bad faith." *Paoli*, 35 F.3d at 793. In its analysis, Defendant again notes that Dr. Thompson's rebuttal report is "a new analysis based upon new data that was not relied upon in the first report." Def.'s Supp. Ltr. at 2. While this is true, there is no indication that Dr. Thompson willfully intended to prepare a flawed rebuttal report or to prejudice Defendant. *See, e.g.*, *Holbrook v. Woodham*, No. 05-304, 2008 WL 544719, at *3 (W.D. Pa. Feb. 28, 2008) (noting that striking an expert report "requires an egregious showing of bad faith"). As such, this factor does not support striking the rebuttal report.

In summary, the first factor is mixed, but the other three factors strongly militate against striking Plaintiff's rebuttal expert report. Therefore, exclusion of the rebuttal report is not warranted at this time.

## CONCLUSION

The rebuttal report prepared by Plaintiff's expert is improper because it was filed four days late and because it does not adequately respond to Defendant's expert report. The rebuttal report fails to acknowledge most of the arguments made by Defendant's experts, and it introduces a new method of calculating damages, based on new data, that contradicts Plaintiff's initial expert report. However, an analysis of the relevant factors demonstrates that the extreme sanction of striking the rebuttal report is not warranted here. Still, to cure prejudice, Defendant is granted leave to file a second expert report and to re-depose Dr. Thompson. In addition, Plaintiff shall bear the Dr. Thompson's fee for Defendant's supplemental deposition. Accordingly, for the foregoing reasons, Plaintiff's Motion to Strike is **DENIED WITHOUT PREJUDICE**.[8] An appropriate Order accompanies this Opinion.

s/ Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc: Hon. Karen M. Williams, U.S.D.J.

---

[8] At oral argument, Defendant sought to reserve the right to strike Plaintiff's expert reports at a later date, *see* Hearing Tr. at 25:3-6, which the Court acknowledged. The Court's ruling here preserves Defendant's ability to attack the reports at later stages of this litigation, such as through a motion *in limine*.