**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

WILLIAM T. LAVELL,

Plaintiff,

v.

CAMDEN COUNTY COLLEGE,

Defendant.

HONORABLE KAREN M. WILLIAMS

Civil Action

No. 21-6832 (KMW-EAP)

**MEMORANDUM OPINION AND ORDER**

**Sidney L. Gold, Esquire**
**William Rieser, Esquire**
The Gold Law Firm, P.C.
1835 Market Street
Suite 515
Philadelphia, PA 19103

*Counsel for Plaintiff William T. Lavell*

**Alyssa Lott, Esquire**
**Kathleen E. Dohn, Esquire**
**William M. Tambussi, Esquire**
Brown & Connery, LLP
360 Haddon Avenue
Westmont, NJ 08108

*Counsel for Defendant Camden County College*

**WILLIAMS, District Judge:**

This matter arises out of the employment of Plaintiff William T. Lavell ("Plaintiff"), a Caucasian man who has been employed for over twenty-nine years by Defendant Camden County College (the "College"). After submitting an Open Public Records Act ("OPRA") request for the College's employee salary records, Plaintiff submitted a memorandum to the College in which he requested a salary adjustment to a rate he believed was commensurate with the salaries of other faculty members of the College, some of whom are African American. When the College rejected Plaintiff's request for the salary adjustment, Plaintiff filed the instant action against the College alleging claims of race discrimination, in violation of 42 U.S.C. § 1981 and the New Jersey Law

Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12. Presently before the Court are Defendant Camden County College's Motion for Summary Judgment (the "College's Motion") and Plaintiff William Lavell's Motion for Partial Summary Judgment ("Plaintiff's Motion"), each filed pursuant to Federal Rule of Civil Procedure 56. In his opposition to the College's Motion, Plaintiff stipulates he does not intend to pursue his claim under Section 1981, raising the issue of whether the Court, in its discretion, should continue to exercise supplemental jurisdiction over Plaintiff's NJLAD claim when the federal claim over which the Court has original jurisdiction is deemed dismissed.[1] For the reasons that follow, the Court **DECLINES** to retain jurisdiction over this matter by exercising its discretion under 28 U.S.C. § 1367(c)(3). The instant action is therefore **DISMISSED WITHOUT PREJUDICE** to Plaintiff's ability to re-file his NJLAD claim in state court.

Plaintiff, a Caucasian male, has been employed by the College, a public community college, since January 1995. College's Statement of Material Facts (the "College's SMF") ¶¶ 1-3. At that time, Plaintiff was hired as an "Assistant Professor I" in the chemistry department. *Id.* ¶ 3. From the time Plaintiff began his employment with the College, his salary was governed by a collective negotiations agreement ("CNA") and, during the course of his tenure, he received various promotions as a faculty member, resulting in increases to his base salary. *Id.* ¶¶ 28, 30, 32. In July 2016, Plaintiff was appointed Acting Interim Dean of Math, Science, and Health Careers. *Id.* ¶¶ 35-36. The following year, in August 2017, Plaintiff returned to his faculty position with

[1] In his opposition to the College's Motion, Plaintiff stipulates the following: "As Plaintiff does not intend to pursue his claims under 42 U.S.C. § 1981 at trial, Plaintiff does not respond to [the College's] Motion with respect to said claims herein." Plaintiff's Opposition Brief ("Pl.'s Opp'n Br.") at 1 n.1. "A plaintiff may only unilaterally dismiss a claim if a notice of dismissal has been filed before the opposing party serves a motion for summary judgment; if the notice is filed after such time, dismissal may only be by court order." *Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 65 n.3 (E.D. Pa. 2020); *see also* Fed. R. Civ. P. 41(a). As Plaintiff did not stipulate to the dismissal of his Section 1981 until after the College filed its Motion for Summary Judgment, the claim can only be dismissed by court order. The Court construes Plaintiff's statement not to pursue his Section 1981 claim at trial as acquiescence to dismissal. The Court, therefore, dismisses Plaintiff's Section 1981 claim – Count I of the Complaint – with prejudice.

less than ten years of service as Acting Interim Dean, and assumed the accompanying salary dictated by the offer letter he signed for the dean position and pursuant to the CNA. *Id.* ¶ 38. During the one-year period when Plaintiff served as Acting Interim Dean, he became aware of the salaries of other members of the faculty through access to "position control reports." *Id.* ¶ 43. After leaving the dean position, Plaintiff raised complaints about his salary.[2] *Id.* ¶ 45; Plaintiff's Response to the College's Statement of Material Facts ("Pl.'s RSMF") ¶ 44.

On September 14, 2020, Plaintiff sent the College an OPRA request for all position control reports from 1995-1996 through 2020-2021 from which he received the salaries of faculty members at the College, including the salaries of Professors Lawrence Chatman and Melvin Roberts, two African American faculty members. College's SMF ¶¶ 64-65; Plaintiff's Supplemental Statement of Material Facts ¶ 15; Certification of William Rieser, Esquire ("Rieser Cert.") ¶ 19 at Exs. P, Q, R. Following the receipt of records from his OPRA request, on November 24, 2020, Plaintiff submitted a request to the College for an adjustment to his base salary in the form of a memorandum to then-President of the College and several other members of the College's faculty and administration (the "Memorandum"). College's SMF ¶ 61. In the Memorandum, Plaintiff stated he "presents data indicating that salary inequity exists at the [College]" and requested that "these salary issues . . . be corrected." Certification of Kathleen E. Dohn, Esquire ("Dohn Cert.") ¶ 21 at Ex. T. Plaintiff stated that "between July 2016 and June 2017, as Interim Dean of the Division of Mathematics, Science and Health Careers, [he] became aware of the salaries of others because of [his] access to Position Control Reports" and that when

[2] The nature of the response Plaintiff received to at least one of those complaints is disputed. *See* College's SMF ¶ 58; Plaintiff's Response to the College's Statement of Material Facts ¶ 58.

he returned to his faculty position, he presented "what [he] perceived as inequities" but "[n]o salary adjustment was made, and no meaningful explanation was provided." *Id.*

In the Memorandum, Plaintiff identified five faculty members of the College, including himself, two other Caucasian faculty members, and Professors Chatman and Roberts. *Id.*; College's SMF ¶¶ 49, 50, 64, 65. Plaintiff presented information about the faculty members' salary histories between 2001-2021 and their academic degrees. Dohn Cert. ¶ 21 at Ex. T. Plaintiff also presented his analysis of salary differences using years of service, salary adjustments after time spent working in administration, and academic rank. *Id.* In presenting his analysis about salary adjustments after time spent working in administration, Plaintiff noted "[t]he primary reason for the salary difference is in the base salary that each of us had upon returning to faculty from administration." *Id.* After presenting the information and his analysis, Plaintiff concluded "[t]he data indicate that [he is] being paid less than colleagues with similar qualifications, responsibilities and length of service" and proposed resolutions to the salary differences identified, including "[i]ncrease[ing his] base salary to account for the one year that [he] spent as a member of the administration" and "[m]aking this change retroactive to when it could have occurred initially" or, in the alternative, "increase[ing his] base salary to something closer to that of Professors Chatman or Roberts." *Id.*

Following receipt of the Memorandum, the College's Executive Director of Human Resources reviewed the salaries of the individuals identified by Plaintiff. College's SMF ¶¶ 71-72. Thereafter, the director sent a letter to Plaintiff dated November 30, 2020 which identified the procedure in place at the time Plaintiff transferred from faculty to administration. Dohn Cert. ¶ 22 at Ex. U. The letter, in part, stated that "if [Plaintiff] remained in the Dean's position for less than ten years, [his] ten-month salary would be equivalent to [his] faculty salary plus all salary increases

granted to faculty while serving in the Dean's position." *Id.* The letter also stated that Plaintiff signed his understanding of this policy in the offer letter for the dean position and concluded that because Plaintiff was a dean "for less than ten years, [he was] given [his] previous salary plus all applicable salary increases per [his] faculty contract." *Id.* On March 26, 2021, Plaintiff brought the instant action against the College.

As previously noted, in his opposition to the College's Motion, Plaintiff states he does not intend to pursue his Section 1981 claim at trial and does not respond to the College's Motion with respect to that claim. However, Plaintiff does not address why this Court should retain supplemental jurisdiction over his NJLAD claim. On the other hand, in response to Plaintiff's statement, the College argues the Court should retain supplemental jurisdiction over the instant action for the following reasons:

- "[d]ismissal of Plaintiff's sole federal claim should not result in this matter being remanded to state court";
- "principles of judicial economy, convenience, and fairness to the parties weigh in favor of this Court retaining jurisdiction over Plaintiff's NJLAD claim";
- "the parties have litigated this action in this Court for nearly three years, completed all pre-trial discovery, and have engaged in extensive motion practice, including the motions currently pending before this Court";
- "[the College] would be prejudiced in having to re-litigate this action in state court after expending significant time and resources during the past three years substantially litigating and defending this action in this Court";
- "Plaintiff waited until summary judgment to attempt to deprive this Court of jurisdiction by dismissing his sole federal claim, presumably because he is faced with the likelihood that all of his claims will be dismissed."

College's Reply Brief in Support of Motion for Summary Judgment at 2-4.

Under 28 U.S.C. § 1367(c)(3), federal district courts have discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." The decision to exercise supplemental jurisdiction over remaining state-law claims pursuant to Section 1367 is within the discretion of the district court. *See Growth Horizons, Inc. v. Delaware Cnty.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). The U.S. Supreme Court has emphasized as much, stating that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Under Third Circuit precedent, supplemental jurisdiction "should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'" *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (quoting *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982)). The Third Circuit has further held that "'substantial time devoted to the case' and 'expense incurred by the parties' [do] not constitute extraordinary circumstances." *City of Pittsburgh Comm'n on Hum. Rels. v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)).

First, the Court addresses the College's argument that dismissal of Plaintiff's sole federal claim should not result in this matter being remanded to state court. To support this proposition,

the College cites to *Levin v. Commerce Energy, Inc.*, where the U.S. Supreme Court stated that "federal tribunals lack authority to remand to state court an action initiated in federal court." 560 U.S. 413, 415 (2010). It appears the College conflates remand with this Court's ability to dismiss Plaintiff's Complaint without prejudice to Plaintiff's ability to re-file his NJLAD claim in state court should the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claim. For clarity, this suit was not initiated in state court and then removed to federal court. Had Plaintiff initiated this suit in state court and the College removed it to federal court, this Court may remand the case rather than dismissing it. *See* 28 § U.S.C. 1447(c). But this is not the procedural posture of the instant action. Plaintiff filed the instant action in federal court. Accordingly, remand would not be appropriate here. To the contrary, a dismissal of the Complaint following the Court's decision to decline exercising supplemental jurisdiction would be proper and Defendant does not cite to any case law that would restrain the Court otherwise. Thus, the proposition the College cites from *Levin* does not apply to the instant action.

Moreover, the Court does not find that the length of this litigation, completion of pre-trial discovery, and an engagement in extensive motion practice weigh in favor of the Court retaining jurisdiction over Plaintiff's NJLAD claim. Indeed, the Third Circuit upheld the decision of a district court to decline the exercise of supplemental jurisdiction in a case involving "two years of litigation, fifteen pages of court docket, 1,800 pages of deposition testimony, and 2,800 pages of discovery documents" and where defendants moved for summary judgment on "the eve of trial." *Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000). Moreover, another court in this district has explicitly recognized the utility of discovery gained in federal court and the parties' ability to use it toward litigation in state court. *See Lindstrom v. St. Joseph's Sch. for the Blind, Inc.*, No. 15-8084, 2016 WL 7015617, at

*3 (D.N.J. Nov. 30, 2016) (collecting cases acknowledging parties' ability to use evidence toward litigation in state court). Notably, it is not the case here that Plaintiff's Section 1981 claim has been dismissed on the "eve of trial." *Annulli*, 200 F.3d at 202. In fact, no trial date has been scheduled.

Additionally, the College does not address how the circumstances in this case qualify under the Third Circuit's "extraordinary circumstances" standard. Instead, the College cites to a Third Circuit case that has a procedural posture quite different from the instant action and another case in support of a court exercising jurisdiction over a state-law claim. The College first cites to *Pryzbowski v. U.S. Healthcare, Inc.*, where the Third Circuit acknowledged that "where the jurisdiction-conferring party drops out and the federal court retains jurisdiction over what becomes a state[-]law claim between non-diverse parties, the bounds of Article III have not been crossed." 245 F.3d 266, 276 (3d Cir. 2001) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1506 (3d Cir. 1996)). Unlike in *Pryzbowski*, the instant action does not involve the district court exercising supplemental jurisdiction over state-law claims against non-diverse parties. Rather, it involves Plaintiff dismissing his federal claim, the sole basis for federal jurisdiction in the instant action. Additionally, the College cites to *Gregor v. TD Bank, N.A.*, where the court acknowledged that "[w]here [a] case has been substantially litigated, it may be a proper exercise of jurisdiction to retain the state-law claims." No. 21-5255, 2021 WL 4490251, at *6 (D.N.J. Oct. 1, 2021). However, "may" is the operative word in that quote. A court is not required to retain jurisdiction over a state-law claim.

The College correctly points out that a court may consider the possibility of forum manipulation when a party drops or dismisses its federal claims. *See Boyd v. 320 Mt. Prospect LLC*, No. 18-8770, 2020 WL 3492053, at *3 (D.N.J. May 19, 2020). However, forum manipulation "is 'but one factor to be considered among the factors of economy, convenience, fairness, and

comity.'" *Id.* (quoting *Cabibbo v. Parsons Inspection & Maint. Corp.*, No. 09-3213, 2009 WL 3074731, at *7 (D.N.J. Sept. 23, 2009)). Here, the College's contention that Plaintiff improperly delayed dismissing his federal claim until the summary judgment stage to deprive this Court of jurisdiction is unsupported by the record evidence.

Finally, this Court's exercise of supplemental jurisdiction over Plaintiff's sole NJLAD claim would place this court in a position to decide a matter of purely state law and interpret state court decisions without an underlying federal cause of action. *See MCF Servs., Inc. v. Ernest Bock & Sons*, No. 05-01115, 2007 WL 4355388, at *5 (E.D. Pa. Dec. 11, 2007). "In the absence of extraordinary circumstances, this court would be placed in the position of acting solely as a state court" lending to an abuse of discretion "for the mere perceived inconvenience of the [P]arties." *Id.*

Accordingly, the Court finds that considerations of judicial economy, convenience, and fairness to the Parties do not weigh in favor of the exercise of supplemental jurisdiction over Plaintiff's NJLAD claim. Moreover, the length of this litigation, completion of pre-trial discovery, and an engagement in extensive motion practice do not constitute extraordinary circumstances.

**ORDER**

**IT IS** this 27th day of **June, 2024**, hereby

**ORDERED** that Plaintiff's race discrimination claim under 42 U.S.C. § 1981 is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's remaining state-law claim; and it is further

**ORDERED** that the remaining state-law claim is **DISMISSED WITHOUT PREJUDICE** to re-filing in state court; and it is further

**ORDERED** that the College's Motion for Summary Judgment (ECF No. 76), Plaintiff's Motion for Partial Summary Judgment (ECF. No. 78), and the College's Motion in Limine (ECF No. 75) are **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE